JUSTICE TRIEWEILER
dissenting.
¶49 I dissent from the majority Opinion.
¶50 The majority Opinion exalts form over substance to determine title to the leased property contrary to the written terms of the parties’ contract and the testimony of the only two parties capable of claiming title. Based on the record, I would conclude that there was no material alteration to the parties’ agreement nor were the guarantor’s remedies impaired in violation of § 28-11-211, MCA. Therefore, I would conclude that the District Court erred and reverse the judgment of the District Court.
¶51 The parties agreed that Advantage Group would order equipment for which Ace Leasing would pay, that Ace Leasing would retain title to the equipment and that Advantage Group would make lease payments to Ace Leasing. The parties’ agreement also provided that in the event payments were not made on schedule, Ace Leasing had certain remedies which it could but need not enforce and that if it did not enforce its right to declare the agreement in default, it would be entitled to a late charge of $15 per month.
¶52 Advantage Group did order equipment from the supplier and apparently, for convenience sake, paid for some of it. Ace then sent the money with which Advantage Group paid the balance due for the equipment and reimbursed itself for the amount it had previously paid. There is nothing about this arrangement that changed the parties’ agreement that Ace would own the equipment. Tim O’Neill, on behalf of Advantage, testified that Ace owned the equipment. A1 Geissler, on behalf of Ace Leasing, testified that Ace owned the equipment. The parties’ contract provided that Ace owned the equipment and no one else was in a position to claim title to the equipment. There was no written document of title and there were no security documents pursuant to Article IX of the Uniform Commercial Code because there was nothing to secure. Ace owned the property.
¶53 The only evidence relied on by the majority to affirm the District Court’s finding that Advantage owned the property was the paperwork which resulted from transactions between Advantage and the suppliers from whom the property was purchased. However, invoices and bills of sale do not establish title. The contract between the parties and their stated intentions determine title.
*299 ¶54 The majority notes in ¶ 9 that Ace did not obtain a security interest in the property. However, that fact is of no significance. There was nothing to secure. It was always the parties’ intention that Ace would own the property. The only departure from what was originally agreed upon was that instead of Ace paying the supplier directly, it forwarded the money to Advantage which then paid the supplier. The difference was merely a matter of form — not of substance. It was not a material alteration of the parties’ agreement.
¶55 The majority’s discussion in ¶¶ 24 to 27 about the affect of the UCC on determination of title is a mere afterthought which was neither discussed by either party nor relied on by the District Court, and is an effort to justify the erroneous conclusion already reached by the majority. Furthermore, it was not previously discussed nor relied on for good reason. Section 30-2-401(2), MCA, has nothing to do with the arrangement between Ace and O’Neill. Its purpose is to establish the respective rights of the seller and the buyer. Here there is no dispute between the seller and the buyer. The issue is “who was the buyer?” The answer, based on the undisputed evidence, is that Ace was the buyer because by agreement between Ace and O’Neill, Ace advanced money to buy the equipment which, pursuant to that agreement, it then owned. Everything else said on the subject is superfluous rhetoric to justify the majority’s result.
¶56 The only other basis for the District Court’s decision was its finding that by accepting late payments from Advantage, Ace Leasing also altered the terms of its lease agreement and that that somehow was to Boustead’s disadvantage. Apparently, the majority does not base its Opinion on that finding. However, it is worth noting that neither was that finding correct.
¶57 The lease agreement provided in Paragraph 10 for Ace’s remedies upon default by Advantage. Importantly, the agreement provided that “[a]ny failure by Lessor to exercise any right set forth in this lease, or otherwise, shall not constitute a waiver of that right at any time.” The contract clearly also anticipated that the lessor could decline to exercise its right to declare the contract in default and in the alternative do exactly what was done by Ace in this case. Paragraph 15 provided as follows:
In the event Lessee fails to pay when due any part to the rent herein reserved, ... and the Lessor has not exercised any of its other rights pursuant to paragraph 10 within ten (10) days after the due date thereof, Lessee shall pay to the Lessor a late charge of fifteen (15) dollars for each month or part thereof for which the *300 rent or other sum shall be delinquent.
¶58 Not only was Ace in complete compliance with the original terms of the agreement when it chose not to exercise its right to terminate the contract for Advantage’s late payment, it was to Boustead’s advantage that Ace actually collected about $4,500 from Advantage. That was $4,500 that Boustead did not have to pay once Advantage was finally declared in default.
¶59 Although I have no quarrel with the District Court’s nor this Court’s interpretation of § 28-11-211, MCA, I would conclude that there have been no facts proven in this case which would warrant its application. I would conclude that there was no evidence that the original obligation of the principal was altered in any respect or that the remedies of the creditor were in any way impaired with regard to the original agreement.
¶60 Contrary to the majority Opinion, Ace did not agree to secure its ownership interest pursuant to Article IX of the Uniform Commercial Code. I do not know of any way it could have secured property that it already owned. Therefore, Boustead could not have been disadvantaged by its failure to do so and, contrary to the majority’s conclusion, she remained at all times in the same position she bargained for when she signed the original guarantee agreement.
¶61 For these reasons, I dissent from the majority Opinion.